EDOK - Application for Search Warrant (Revised 5/13)

# United States District Court

## EASTERN DISTRICT OF OKLAHOMA

FILED
MAR 30 2018
PATRICK KEANEY
Clerk, U.S. District Court
By _____ Deputy Clerk

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF CONTENTS OF STORED ELECTRONIC COMMUNICATIONS FOR VERIZON WIRELESS CELLULAR TELEPHONE NUMBER (479) 228-0459 | Case No. **18-MJ-046-SPS** |

## APPLICATION FOR SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the District of New Jersey *(identify the person or describe property to be searched and give its location)*:

**SEE ATTACHMENT "A"**

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT "B"**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of Title 21, United States Code, Sections 846 and 841(a)(1), and the application is based on these facts:

☒ Continued on the attached sheet.
☒ Delayed notice of 30 days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
JOHN MORRISON
DEA TFO

Sworn to before me and signed in my presence.

Date: March 30, 2018

City and state: Muskogee, Oklahoma

_____
*Judge's signature*
STEPHEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with Verizon Cellular Telephone Number (479) 228-0459 that is stored at premises owned, maintained, controlled, or operated by Verizon Wireless, a wireless provider headquartered at 180 Washington Valley Road, Bedmister, NJ 07921.

## ATTACHMENT B

## Particular Things to be Seized

I. **Information to be disclosed by Verizon Wireless**

To the extent that the information described in Attachment A is within the possession, custody, or control of Verizon Wireless, including any messages, records, files, logs, or information that have been deleted but are still available to Verizon Wireless or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Verizon Wireless is required to disclose the following information to the government for each account or identifier listed in Attachment A:

    a.    All voice mail, text, and multimedia messages stored and presently contained in, or on behalf of the account or identifier;

    b.    All existing printouts from original storage of all of the text messages described above;

    c.    All transactional information of all activity of the telephones and/or voicemail accounts described above, including log files, messaging logs, local and long distance telephone connection records, records of session times and durations, dates and times of connecting, methods of connecting, telephone numbers associated with outgoing and incoming calls, cell towers used, and/or locations used from March 13, 2018, to present;

    d.    All text messaging logs, including date and time of messages, and identification numbers associated with the handsets sending and receiving the message;

    e.    All business records and subscriber information, in any form kept, pertaining to the individual accounts and/or identifiers described above, including subscribers' full names, addresses, shipping addresses, date account was opened, length of service, the types of service

utilized, ESN (Electronic Serial Number) or other unique identifier for the wireless device associated with the account, Social Security number, date of birth, telephone numbers, and other identifiers associated with the account;

 f. Detailed billing records, showing all billable calls including outgoing digits, from March 13, 2018, to present;

 g. All payment information, including dates and times of payments and means and source of payment (including any credit or bank account number), from March 13, 2018, to present;

 h. Incoming and outgoing telephone numbers, from March 13, 2018, to present;

 i. All records indicating the services available to subscribers of individual accounts and/or identifiers described above;

 j. All records pertaining to communications between Verizon Wireless and any person regarding the account or identifier, including contacts with support services and records of actions taken.

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) and 846 involving use of the subject telephone since March 13, 2018, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

 a. Evidence of the possession and/or distribution of controlled substances;

 b. Evidence indicating how and when the cellular device and associated cellular service was used to determine the chronological context of cellular device use, account access, and events relating to the crime under investigation;

    c.    Evidence indicating the geographic location of the cellular device at times relevant to the investigation;

    d.    Evidence indicating the cellular device owner or user's state of mind as it relates to the crime under investigation;

    e.    The identity of the person(s) who created the account associated with the cellular device and/or used the cellular device, including records that help reveal the whereabouts of such person(s).

# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR STORED WIRE AND ELECTRONIC COMMUNICATIONS

I, Agent John Morrison, being duly sworn depose and say:

## AFFIANT'S TRAINING AND EXPERIENCE

1. I have been a Peace Officer since January of 2001. I began my career with the Overland Park, Kansas, Police Department and worked there as a certified Peace Officer until January of 2004. I then moved to the Muskogee, Oklahoma, Police Department in January of 2004, and worked there as a certified Peace Officer until March of 2012. I am currently employed by the Oklahoma Bureau of Narcotics and Dangerous Drugs Control (hereinafter OBN) as a full-time Peace Officer and Narcotics Agent. I have been so employed since March 19, 2012. Currently, I am assigned to the Drug Enforcement Administration (DEA) as a Task Force Officer (TFO).

2. While working as a certified Peace Officer, I have spent more than eleven years working in patrol. I am currently an investigator with more than five years of experience in narcotics investigations. In addition to those duties, I have served as a member of the Muskogee Police Department's Special Operations Team and as a Field Training Officer. In 2007, I earned an instructor certification through the Oklahoma Council on Law Enforcement Education and Training (C.L.E.E.T.), and I am currently an adjunct Defensive Tactics Instructor.

3. I have attended over 1,200 hours of continuing education and training during my law enforcement career. I have attended training specific to the investigation of illegal drug offenses provided by C.L.E.E.T., OBN, DEA, the Midwest Counterdrug Training Center, the Muskogee Police Department, and Association of Oklahoma Narcotic Enforcers (AONE). I have participated in courses relating to narcotics investigation such as Undercover Survival, Narcotics

1

Air Assault School, the OBNDD Narcotics Investigators School, Criminal Interdiction, and the search of electronic devices.

4. I have conducted hundreds of investigations involving drug crimes to include the unlawful manufacture, distribution, possession of controlled dangerous substances and conspiratorial activity related to the same. During my career, I have participated in hundreds of interviews of victims, suspects, arrestees, witnesses, cooperating individuals, and informants. Through these interviews, I have been informed of the various aspects/practices related to the regular activities of the illicit drug business and the operations thereto related. I have written, planned, and executed search warrants, and have testified under oath in court. Through this training and experience, I have become especially familiar with the techniques and operations of those involved in the drug trade and their day-to-day activities.

5. My experience includes, but is not limited to, patrol, investigations, conducting physical surveillance, and executing search warrants relating to a myriad of offenses including drug crimes. I have also acted in an undercover capacity where I have purchased drugs and engaged in hand-to-hand transactions with drug dealers. I have consulted with other experienced officers in narcotics investigations, and I have worked with other local, state, and federal law enforcement agencies.

6. I have been the case agent in the investigation of large scale drug conspiracies involving the distribution of hundreds of pounds of methamphetamine. During those investigations, I have written, assisted in the preparation of, and executed hundreds of search warrants, pen registers, and I have received authorization from the Oklahoma Court of Criminal Appeals to conduct wire intercepts of cellular telephones.

## DESCRIPTION OF ITEMS TO BE SOUGHT/SEIZED

7. I seek an order and search warrant ordering Verizon Wireless to provide stored wire and electronic communications for the following phone number: **(479) 228-0459**.

## PROBABLE CAUSE AS IT RELATES TO THE TARGET PHONE NUMBER

8. This affidavit for search warrant is the result of a joint investigation between the DEA, the OBN, Oklahoma District Attorney District 27 Drug Task Force (DTF-27), and the Adair County Sheriff's Office (ACSO).

9. This affidavit is written as part of an ongoing investigation into the **Waylon WILLIAMS** Drug Trafficking Organization (DTO.) On July 28, 2017, **WILLIAMS** was arrested during the execution of a search warrant at his residence located at Rural Route 3, Box 1455, Stilwell, Oklahoma. During a search of the residence and curtilage, approximately 466 grams of a white rock like substance believed to be methamphetamine was found. The Oklahoma State Bureau of Narcotics laboratory has confirmed the substance to contain methamphetamine. The methamphetamine was located in the yard of the residence approximately 350 feet southwest of the residence and was found inside a box. Also located during the execution of the search warrant was a substance believed to be marijuana, drug paraphernalia used to ingest narcotics, cellular telephones, and approximately 50 firearms. As a result of the search warrant, **WILLIAMS** was placed under arrest and was transported to the Adair County Jail, Stilwell, Oklahoma. **WILLIAMS** posted a bond and was released with charges pending in Adair County District Court.

10. On September 27, 2017, the United States District Court for the Western District of Oklahoma entered an order authorizing the interception of oral and electronic communications over cellular telephone (405) 875-6203, believed to be utilized by **Cesar ALZUARTE**. **ALZUARTE** was the target of an investigation being conducted by the Drug Enforcement

3

Administration (DEA), Oklahoma City Office. During the investigation, **ALZUARTE** was identified as a methamphetamine distributor who sold methamphetamine in pound quantities. During the interception period of the cellular telephone utilized by **ALZUARTE**, communications were intercepted between **ALZUARTE** and cellular telephone number (918) 718-4845. From the intercepted communications, law enforcement believed **ALZUARTE** to be a source of supply for methamphetamine for the user of cellular telephone (918) 718-4845. During the intercepted communications, **ALZUARTE** agreed to meet the user of cellular telephone (918) 718-4845 in Stilwell, Oklahoma, to pick up what investigators believed to be approximately $24,000 to $25,000 in United States Currency. DEA Agents and TFOs conducted physical surveillance of **ALZUARTE** and his wife, **Monica BOJORQUEZ**, and followed them from Oklahoma City, Oklahoma, to Stilwell, Oklahoma. **ALZUARTE** and **BOJORQUEZ** met a white male driving a black Dodge Charger with Oklahoma License Plate EIU 074 in the parking lot of the Stilwell Wal-Mart. A registration check of the license plate showed the vehicle to be registered to **Waylon WILLIAMS** with an address of Rural Route 3, Box 1455, Stilwell, Oklahoma 74960. From a driver's license photograph, I was able to identify the white male with whom **ALZUARTE** and **BOJORQUEZ** met as **Waylon WILLIAMS**. From the physical surveillance in conjunction with the intercepted communications between **ALZUARTE** and **WILLIAMS**, I believed the user of cellular telephone number **(918) 718-4845** to in fact be **WILLIAMS**.

11. On November 22, 2017, Chief Judge Ronald A. White of the United States District Court for the Eastern District of Oklahoma entered an order authorizing the interception of oral and electronic communications for the cellular telephone believed to be utilized by Waylon **WILLIAMS**. While the order was signed on November 22, 2017, the interception period didn't start until November 27, 2017 when the order was served to Verizon Wireless and the first

4

interception was received. The interception period of **WILLIAMS'** cellular phone ended on December 26, 2017. On December 27, 2017, I received an order in the Eastern District of Oklahoma authorizing the extension of the interception of wire and electronic communications coming to and from **WILLIAMS'** cellular phone. The order was served to Verizon Wireless on January 2, 2018, and the first intercepted communication occurred on that day and lasted until January 31, 2018.

12. In December of 2017, SA Matt Niles and I interviewed Megan **WATKINS** in reference to **WILLIAMS**. **WATKINS** said she had purchased methamphetamine from **WILLIAMS** since 2015. **WATKINS** said the purchases were weekly or bi-weekly and the most methamphetamine she ever saw **WILLIAMS** have at one time was approximately one pound. **WATKINS** also said **WILLIAMS** always had US currency on his person from methamphetamine sales. **WATKINS** said **WILLIAMS** utilized cellular phone **(918) 718-4845** and would contact **WILLIAMS** on the phone to arrange the methamphetamine purchase. **WILLIAMS** instructed **WATKINS** to talk in vague terms and not to specifically mention the purchase of methamphetamine. In fact, **WILLIAMS** told **WATKINS** to just send a text message to him and ask if she could come over to **WILLIAMS'** residence but not say what for. Sometimes **WILLIAMS** wouldn't even reply to the text message and had instructed **WATKINS** that even if he didn't answer it was still ok to come to his residence. **WATKINS** said **WILLIAMS** communicated this way to avoid detection from law enforcement. At the time of the interview **WATKINS** was unaware of the wire intercept of **WILLIAMS'** cellular phone. During the interview, **WATKINS** corroborated **WILLIAMS'** cellular telephone number, as (918) 718-4845, the location of his residence at **Rural Route 3, Box 1455, Stilwell, Oklahoma,** and the black Dodge Charger as the vehicle he drove. In addition the way **WATKINS** said she communicated

5

with **WILLIAMS** was consistent with the type of communications that were being intercepted from **WILLIAMS'** cellular phone.

13.　On December 18, 2018, during the interception periods for the **WILLIAMS'** cellular phone, he **(WILLIAMS)** was intercepted communicating with cellular phone number **(479) 228-0459**. That cellular phone number has no known subscriber with a service provider of Verizon Wireless. Law enforcement databases showed the phone number to be utilized by Carl **CUSHING**. The intercepted communication was an audio call. During the call **WILLIAMS** spoke with a male subject and asked if he could stop by their residence and the male subject said yes. At the time of the audio call, I was conducting physical surveillance of **WILLIAMS** as he traveled southbound on Oklahoma State Highway 59 toward Westville, Oklahoma which is also within the Eastern District of Oklahoma. After the audio call, I followed **WILLIAMS** to an address in Adair County. Through law enforcement databases, that address showed to be the current residence of Carl **CUSHING**.

14.　On January 17, 2018, I received a search warrant in the Eastern District of Oklahoma commanding Verizon Wireless to provide me with the stored communications for the cellular phone number **(479) 228-0459**. The order was served to Verizon Wireless on January 18, 2018. On January 27, 2018, Verizon Wireless provided me with stored communications for the cellular phone number. The stored communications that Verizon Wireless provided to me were from January 3, 2018, to January 8, 2018. From the stored communications, I was able to identify the user of the cellular phone as Carl **CUSHING**. The stored communications for **(479) 228-0459** showed that **CUSHING** was distributing methamphetamine. For example: On January 5, 2018, **CUSHING** received an incoming text message from (479) 215-9742 which states "Carl this is Sheila I ne3d just 20 can I grab it". I know from training and experience that "20" refers to an

amount of methamphetamine known as "a quarter paper." The amount corresponds to a user quantity of methamphetamine.

15. On January 29, 2018, **WILLIAMS**, was placed under arrest on a federal arrest warrant out of the Eastern District of Oklahoma charging him with Possession with Intent to Distribute Methamphetamine and Marijuana. On February 20, 2018, SA Niles and I conducted a post-arrest interview of **WILLIAMS**. Also present for the interview was **WILLIAMS'** attorney. During the interview **WILLIAMS** identified the cellular phone number of **(479) 228-0459** as being utilized by **CUSHING**. **WILLIAMS** said he began distributing methamphetamine to **CUSHING** in late 2015 or early 2016. **WILLIAMS** said **CUSHING** had a different source of supply for methamphetamine until that source was arrested. After the previous source was arrested, **WILLIAMS** began distributing methamphetamine to **CUSHING**. **WILLIAMS** said he distributed methamphetamine to **CUSHING** in two-ounce quantities at least every two to four weeks. **WILLIAMS** said **CUSHING** would come to **WILLIAMS'** residence to pick up the methamphetamine and **WILLIAMS** would travel to **CUSHING's** residence to pick up the money that was owed to him from the earlier transactions. I asked **WILLIAMS** about an intercepted telephone call on December 18, 2018, between **WILLIAMS** and **CUSHING** and subsequent physical surveillance of **WILLIAMS**. **WILLIAMS** said the intercepted audio call was in reference to him traveling to **CUSHING's** residence to pick up money that was owed to him from a previous methamphetamine transaction and said the residence he went to was in fact **CUSHING's**. Local law enforcement also identified the location as **CUSHING'S** residence.

16. On March 6, 2018, I received a search warrant in the Eastern District of Oklahoma commanding Verizon Wireless to provide me with the stored communications for the cellular phone number **(479) 228-0459**. The order was served to Verizon Wireless on March 7, 2018. On

7

March 12, 2018, Verizon Wireless provided me with stored communications for the cellular phone number. The stored communications that Verizon Wireless provided to me were from March 1, 2018, to March 5, 2018. The stored communications I received from Verizon Wireless showed **CUSHING** was still actively distributing methamphetamine. and was using his residence to store and distribute amounts of methamphetamine. For example: On March 2, 2018, **CUSHING** received an incoming text message from (479) 595-5927 which stated "Let me know if I can stop n get that on my way 2 work 2 Moro. Plz. Can I plz. Thnx".

17. On March 20, 2018, I received a search warrant in the Eastern District of Oklahoma for the residence of Carl **CUSHING** located at 68864 Hwy 59, Westville, Oklahoma 74965. I had also obtained an arrest warrant in the Eastern District of Oklahoma for **CUSHING**. The search warrant and arrest warrant were going to be executed on March 22, 2018, as part of a "warrant sweep" of members of the **WILLIAMS DTO**.

18. In the early morning hours of March 22, 2018, law enforcement began conducting surveillance at **CUSHING'S** residence. At approximately 4:10 a.m., a subject was observed walking from **CUSHING'S** residence to an outbuilding. Shortly thereafter a vehicle was observed leaving the residence traveling south on Hwy 59.

19. At approximately 6:02 a.m., I served the search warrant at **CUSHING'S** residence with the assistance of other agents with the Oklahoma Bureau of Narcotics. As agents served the search warrant a female subject, later identified as Amanda **MURRAY**, was located in the backyard of the residence. **CUSHING** was not located at the residence. **MURRAY** told agents she did not know **CUSHING**'s whereabouts. I told **MURRAY** that **CUSHING** had a warrant out for his arrest. **MURRAY** attempted to call **CUSHING** from her cellular phone but he did not answer. I also attempted to call **CUSHING** from my cellular phone and again he did not answer.

20. During a search of **CUSHING'S** residence agents located a white crystalline substance that field tested positive for methamphetamine. The substance was found sitting loose on top of a desk in a bedroom. Agents also located a glass pipe that is believed to be used to ingest methamphetamine. Agents also seized **MURRAY'S** cellular telephone pursuant to the search warrant.

21. Pursuant to the search warrant, the content of **MURRAY'S** cellular phone was analyzed. On March 21, 2018, at approximately 11:34 a.m. **MURRAY** received an incoming text message from cellular phone number (918) 507-1130 that read "Law looking for him."

22. From the text message located on **MURRAY'S** cellular phone as well as the surveillance that was conducted at **CUSHING'S** residence prior to the search warrant being executed on March 22, 2018, I believe that **CUSHING** had possibly received prior notification that law enforcement was coming to arrest him. Currently, **CUSHING** has still not been located and placed under arrest on the federal arrest warrant. I believe the stored text messages and voicemails from **CUSHING'S** cellular telephone will assist law enforcement in locating **CUSHING** as well as possibly assist in the identification of anyone who might have communicated to **CUSHING** that law enforcement was coming to his residence to arrest him or others involved in his drug distribution activity. All of the text messages and voice mails spanning back several months would be relevant to this investigation. As such, I request stored communications from the preceding thirty days; however, it is believed that this time frame will be greater than the length of electronic communications kept in storage.

## DELAYED NOTICE

19. Pursuant to 18 U.S.C. §§ 2705(a) and (b), the Applicant submits, based on the information contained in this affidavits and the attachments thereto, that immediate notice to Carl

9

CUSHING, or anyone associated with the WILLIAMS DTO would cause continued flight from prosecution by CUSHING, the destruction of or tampering with evidence by individuals involved in this criminal organization, and would serious jeopardize the investigation. The applicant submits that the notice and service will be executed pursuant to statute, unless further authorization for delayed notice is granted by the Court. Therefore, applicant requests Delayed Notification for a period of 30 days.

_____
John Morrison, Task Force Officer
Drug Enforcement Administration

Sworn to and subscribed to before me this the __30th__ day of March, 2018.

_____
STEPHEN P. SHREDER
United States Magistrate Judge